IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kathleen Masters,          :

    Plaintiff,          :

  v.                   :     Case No. 2:08-cv-1041

Michael J. Astrue, Commissioner :     JUDGE FROST
of Social Security,

    Defendant.          :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Kathleen Masters, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. That application, which was filed on February 17, 2005, alleged that plaintiff became disabled on January 3, 1999, as a result of complications from leg surgery.

After initial administrative denials of her claim, plaintiff was afforded a video hearing before an Administrative Law Judge on May 8, 2008. In a decision dated May 28, 2008, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on May 25, 2008.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on January 8, 2009. Plaintiff filed a Statement of Errors on February 5, 2009, to which the Commissioner responded on March 17, 2009. No reply brief has been filed, and the matter is now ripe for decision.

## II. The Lay Testimony

Plaintiff testified to the following facts at the administrative hearing. She was born in 1950, making her 57 years old on the date of the hearing. (Tr. 206). She has an M.D. and is licensed to practice medicine in Ohio. (Tr. 207). She last worked as a doctor in 1999 and was an emergency room physician at two different hospitals. Id.

Plaintiff stopped working after she had leg surgery in 1999. She testified that the pain from her surgery and the pain medication she takes has made it impossible for her to return to work. (Tr. 208).

Plaintiff does some household chores such as loading and unloading the dishwasher and she occasionally uses a personal computer at home. (Tr. 210-11). She occasionally shops for groceries but usually has her daughter do the shopping. (Tr. 212). During a typical day, she lies down, reads, and watches television. (Tr. 213).

Plaintiff testified that she can stand for 20 minutes at a time and sit for 45 minutes. She can lift a gallon of milk. (Tr. 214). She has constant pain in her right groin, buttock and leg. (Tr. 215). She is prone to falling. (Tr. 216). Her medications affect her concentration. (Tr. 218). She seldom goes more than three hours without lying down. (Tr. 220).

## III. The Medical Records

Pertinent medical records reveal the following. Plaintiff was seen by Dr. Mulligan on July 22, 1999. She was reporting pain and difficulty walking. She had undergone surgery for a release of the rectus femoris in January of the year and had noticed intense right groin pain immediately after the surgery, which pain at times was radiating down her leg. She had also undergone physical therapy, which had not really helped her.

The treatment plan was to do a series of nerve blocks and to change her medication. A nerve block was performed that day. (Tr. 74-76.). The surgical records themselves showed that her prognosis for heterotopic ossification was guarded and that the condition could reoccur. (Tr. 77-80).

Plaintiff had been seeing Dr. Gordon for this condition before she saw Dr. Mulligan. At an office visit with Dr. Gordon three years later, she showed no improvement in her symptoms. She could walk only 50 to 100 yards and sit for 40 to 60 minutes. She was taking methadone at the time for pain. (Tr. 89). Dr. Gordon also completed a form for plaintiff's insurer stating that plaintiff had limitations in mobility, ambulation, sitting and bending which would not improve, and that she was not capable of remunerative employment at that time. (Tr. 86).

A state agency reviewer, Dr.Klyop, reviewed the records and, on May 2, 2003, expressed the opinion that plaintiff could lift less than 10 pounds frequently, could lift 10 pounds occasionally, could stand up to two hours, could sit for up to six hours, could occasionally climb ramps or stairs, and could never climb ropes or ladders or balance, crouch or crawl. She would also be unable to sit or walk for more than 30 minutes at a time or bend without pain. (Tr. 97-101).

Plaintiff underwent a physical evaluation performed by Dr. Sharkis on May 25, 2005. At that time, her main problem was pain in the right hip making it difficult for her to stand or to walk for more than an hour. Sitting was also difficult, Her most comfortable position was lying on her left side. She was still taking methadone for pain. On examination, she favored the right leg. Dr. Sharkis thought that she could stand no more than an hour and sit no more than two hours per day with a 30 minute break after 60 minutes. She could lift only five pounds. (Tr. 152-53).

Dr. Dunnan completed a physical capacities evaluation form on March 28, 2007. He concluded that plaintiff could stand for a total of one to three hours and a could sit for two to three hours, but for only 15 minutes at a time. She needed rest periods during the day and needed an option to sit, stand, or lie down at will. She also experienced moderate to severe pain. (Tr. 160-61). He completed a similar form later and made similar findings. (Tr. 180-89).

## IV.   The Vocational Testimony

A vocational expert, Mr. Pagella, also testified at the administrative hearing. He characterized plaintiff's past work as a physician as skilled and performed at the medium exertional level. He was asked to assume that plaintiff could perform sedentary work with a sit-stand option and had various postural restrictions as well as workplace restrictions relating to climbing ladders, ropes or scaffolds or working around unprotected heights. With those restrictions, and with her transferable skills, plaintiff could do a number of skilled sedentary jobs such as medical expert, rehabilitation consultant, and health services manager. (Tr. 227-28). If plaintiff also were limited to the performance of simple, repetitive tasks due to the side effects of her medication, she could do a number of unskilled sedentary jobs, but the Medical-Vocational Guidelines would affect the outcome of the case after plaintiff turned 50. (Tr. 230-31). Additionally, he testified that if someone is off task for 20% of the work day, that is not consistent with competitive employment. (Tr. 234).

## V.   The Administrative Decision

Based on the above evidence, the Commissioner found that plaintiff suffers from severe impairments which were described as "myositis ossificans of the glutei muscles and shortening of the rectus femoris muscles, status post excision of heterotopic

-4-

ossification; post surgery neuropathic pain to the right lower quadrant; status post cosmetic breast augmentation and subsequent repair of ruptured silicone breast implant; lengthening of rectus femoris; and contracture of the right hip with spasticity." (Tr. 16). With these restrictions, plaintiff could perform sedentary work with a sit-stand option so long as she were not off task more than ten percent of the time, but she could never climb ladders, ropes or scaffolds, could never crawl, could not be exposed to unprotected heights, and could only occasionally climb ramps or stairs, balance, stoop, crouch, and kneel. This functional capacity precluded plaintiff from doing her past work but was consistent with the ability to perform the jobs identified by the vocational expert. As a result, plaintiff was found not to be entitled to disability benefits.

### VI. Legal Analysis

In her statement of errors, plaintiff raises two issues. She argues that the Commissioner should have given controlling weight to the opinions of the treating and examining physicians, and that more weight should have been given to her testimony as to disabling pain and symptoms. These issues present the question of whether the Commissioner's decision is supported by substantial evidence.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as

a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's first assignment of error deals with the weight to be given to the opinion of a treating physician.  A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial.  Cornett v. Califano, [Jan. 1980 - Sept. 1980 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶16,622 (S.D. Ohio Feb. 7, 1979).

A physician's statement that plaintiff is disabled is not determinative of the ultimate issue.  The weight given such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. §404.1527; Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).  In evaluating a treating physician's

opinion, the Commissioner may consider the extent to which that
physician's own objective findings support or contradict that
opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v.
Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The
Commissioner may also evaluate other objective medical evidence,
including the results of tests or examinations performed by non-
treating medical sources, and may consider the claimant's
activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d
284 (6th Cir. 1994).

If not contradicted by any substantial evidence, a treating
physician's medical opinions and diagnoses are afforded complete
deference. Harris, 756 F.2d at 435. The Commissioner may have
expertise in some matters, but cannot supplant the medical
expert. Hall v. Celebrezze, 314 F.2d 686, 690 (6th Cir. 1963).
The "treating physician" rule does not apply to a one-time
examining medical provider, and the same weight need not be given
to such an opinion even if it favors the claimant. Barker v.
Shalala, 40 F.3d 789 (6th Cir. 1994) (per curiam).

The Commissioner gave several reasons for discounting the
opinions of Drs. Gordon and Dunnan, the two treating sources who
expressed opinions that plaintiff was disabled. First, with
respect to Dr. Gordon, although plaintiff was seen by Dr. Gordon
on a number of occasions after her surgery, there was a gap in
treatment from November, 1999, to July, 2002. Dr. Gordon's
opinion of disability expressed in 1999 related exclusively to
plaintiff's ability to return to work as an emergency room
physician, and the Commissioner accepted that finding. Her 2002
opinion was rejected because the limitations it imposed were not
consistent with her own treatment notes concerning plaintiff's
ability to sit and walk. As the Commissioner's decision pointed
out, the office notes revealed an ability to walk fifty to one
hundred yards and sit for forty to sixty minutes, whereas the

disability opinion stated that plaintiff could not walk at all and could sit no longer than twenty minutes.

These reasons are sufficient to allow the Commissioner to discount her opinion. It is not clear from the treatment notes how the limitations described there translate into restrictions on doing a purely sedentary job for an eight-hour work day. Someone who can sit for up to an hour and walk short distances can do sedentary work if they can alternate these positions and movements throughout a work day. Therefore, the Commissioner could reasonably have concluded both that these limitations more accurately described plaintiff's condition and that they were fairly consistent with the ability to do a restricted ranged of sedentary work with a sit-stand option, which is the ultimate RFC which the Commissioner found to exist.

The Commissioner rejected Dr. Dunnan's opinions for the following reasons. Dr. Dunnan's finding of disability was premised upon the existence of moderate to severe pain. The most limiting restriction he put upon plaintiff was the need to lie down at will. The Commissioner viewed this opinion as contradicted by Dr. Dunnan's office note of February 20, 2008, where plaintiff had indicated that her pain was "decently controlled" and that she did not want any more or different pain medication. (Tr. 199). There are no objective findings which suggest that plaintiff must have the option of lying down at will, and neither Dr. Gordon nor the consultative examiner, Dr. Sharkis, imposed that restriction. It appears to have come from plaintiff's own report of symptoms, and is consistent with her testimony at the administrative hearing. Thus, this issue can be combined with the second issue, which is whether the Commissioner had an adequate basis for discounting her testimony.

The Commissioner construed plaintiff's testimony on the issue of disabling symptoms to be that she could not work due to

problems with walking and concentration.  That is not exactly what she said, however.  She testified that she never goes more than three hours without lying down on her left side to relieve the pain in her leg to the point where she can tolerate it.  (Tr. 220-21).  The Commissioner found that she was able to do household chores, take care of personal needs, walk without a cane, and drive a car, so that her difficulty walking would not necessarily be so severe as to preclude her from doing an essentially sedentary job.  The Commissioner also discounted her testimony concerning inability to concentrate by noting that she was able to use a home computer, attend to reading and television programs, and pay attention during the administrative hearing.  Finally, the Commissioner observed that she did not engage in overt pain behavior during the hearing and, again, had told Dr. Dunnan that her pain was "decently controlled."

    The lack of overt pain behavior at the administrative hearing is a variation of the long-discredited "sit and squirm" test and is not a proper reason for disbelieving a claimant's report of pain.  The rest of the rationale given for failing to credit plaintiff's testimony, except for the one statement she made to Dr. Dunnan about the severity of her pain, focuses on her ability to walk or to concentrate, neither of which were the reason given by Dr. Dunnan for finding her disabled, nor the reason plaintiff gave for being unable to do jobs other than her prior work as an emergency room physician.  Although the Court must give the Commissioner's credibility findings substantial deference, there must be a rationale for rejecting the claimant's testimony about disabling symptoms which the Court can review.  Here, the Commissioner's decision does not directly address the symptom that is the basis not only for the plaintiff's subjective report of disability, but her treating physician's opinion that she cannot work.  Without a clear explanation of why the

-9-

Commissioner rejected this testimony, the Court cannot find that the decision is supported by substantial evidence. See Rogers v. Commissioner, 486 F.3d 234, 248 (6th Cir. 2007 (explaining the need for a clear rationale as to credibility determinations); Reynolds v. Commissioner, 2009 WL 801465 (E.D. Mich. March 23, 2009)(same); cf. Meece v. Barnhart, 192 Fed.Appx. 456 (6th Cir. August 8, 2006) (court engaged in a detailed review of each facet of the Commissioner's credibility findings, and also noted that the ability to do household activities on an infrequent basis is not inconsistent with the inability to do sustained work activity); Cohen v. Secretary of HHS, 964 F.2d 524 (6th Cir. 1992). Under these circumstances, a remand is required in order to allow the Commissioner directly to address this issue.

## VII. Recommended Disposition

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge